In the Matter of the Estate of FRANK LESLIE, also Known as MRS. FRANK LESLIE, also Known as the BARONESS DE BAZUS, Deceased.

ARTHUR LESLIE, Appellant; WILLIAM NELSON CROMWELL and LOUIS H. CRAMER, as Executors, etc., of FRANK LESLIE, Deceased, and Others, Respondents.

First Department, November 17, 1916.

Decedent's estate — will — petition to set aside probate and to intervene — proof — evidence of relationship — power of court to take evidence upon question involved.

A person, omitted from a probate proceeding, and claiming that he is now entitled, as matter of right, to be afforded an opportunity to contest the will, must show that he is a person interested in the estate of the decedent who would be entitled to some share thereof if it were determined that she died intestate.

Such a claimant, basing his right upon the fact that he is a grandson of a former husband of the decedent from whom she received some part of the estate undertaken to be disposed of by her will, and relying upon section 91 of the Decedent Estate Law, must show: *First*, that the inheritance or some part of it came from the deceased husband; *second*, that he is an heir at law of said deceased husband; *third*, that the decedent died intestate, and *fourth*, that there is no person entitled to inherit from the decedent under any of the preceding sections of the statute.

An affidavit presented by such a claimant that the affiant's mother told her that the decedent was the illegitimate child of her father by a negro slave, has no probative value where neither the affiant nor her mother is or was of the family of the decedent.

Evidence in such a proceeding examined, and *held*, (1) insufficient to establish the petitioner's allegation that the decedent was the daughter of a negro slave; (2) that the evidence is overwhelming that she was the daughter of her father and a woman with whom he lived for many years, and whom he recognized and held forth as his wife, and who was recognized as such by his mother and other members of his family.

Although the court, where the papers presented by a petitioner are not sufficient to permit of his intervention in a probate proceeding, may take evidence upon the question involved, such power should be exercised sparingly and with discretion, and should not be permitted unless the petitioner first show with some degree of probability that his claim is well founded, and that if afforded an opportunity he will be able to substantiate it.

APPEAL by Arthur Leslie from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 7th day of March, 1916.

*John N. Blair,* for the appellant.

*Clarke M. Rosecrantz* and *Edward H. Green* of counsel [*Sullivan & Cromwell,* attorneys], for the respondent executor Cromwell.

*Edgar T. Brackett,* for the respondent executor Cramer.

*Horace E. Parker,* for the respondent Carrie Chapman Catt.

*George A. Strong,* for the respondent Carrie H. Wrenn.

*Arthur Jones,* for the respondent Maynard D. Follin.

SCOTT, J.:

This is an appeal from a decree of the Surrogate's Court in New York county denying a motion by Arthur Leslie for an order "re-opening, setting aside or vacating the proceedings heretofore had relative to the probate of the said last will and testament of said deceased [Mrs. Frank Leslie, also known as Baroness de Bazus], and directing that a citation or supplemental citation be issued to the petitioner Arthur Leslie, as one of the heirs at law and next of kin of the above named deceased so that he may attend the probate proceedings of the said alleged will and be heard in connection therewith, and so that he may file objections to the probate thereof."

The will in question was admitted to probate and letters testamentary issued to the executors therein named on or about December 7, 1914, after citations had been issued to and served upon a large number of persons, not, however, including the present petitioner. He claims that he was entitled to notice of the application for probate and to an opportunity to contest it, and that, having been omitted from the proceeding, he is now entitled, as matter of right, to be afforded an opportunity to contest the will. To sustain this claim he must show that he is a person interested in the estate of the decedent who would be entitled to some share thereof if it were determined that she died intestate. He does not claim that he was kith or kin of decedent, but bases his claim to a right to share in

First Department, November, 1916.          [Vol. 175.

her estate upon the fact that he is a grandson of Frank Leslie, her former husband, from whom she received some part of the estate undertaken to be disposed of by her will. To support this claim he relies upon section 91 of the Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18), which reads as follows: " When the inheritance shall have come to the intestate from a deceased husband or wife, as the case may be, and there be no person entitled to inherit under any of the preceding sections, then such real property of such intestate shall descend to the heirs of such deceased husband or wife, as the case may be, and the persons entitled, under the provisions of this section, to inherit such real property, shall be deemed to be the heirs of such intestate." To establish his claim the petitioner must show: *First*, that the inheritance or some part of it came from the deceased husband of Mrs. Leslie. This is not seriously disputed. *Second*, that he is an heir at law of said deceased husband. This is admitted. *Third*, that the decedent, Mrs. Leslie, died intestate. This he hopes to accomplish by a successful contest of the probate of her will if he be permitted to intervene. *Fourth*, that there is no person entitled to inherit from Mrs. Leslie under any of the preceding sections of the act, that is to say, that she left no persons answering the statutory description of her heirs at law or next of kin. His task is to establish this last proposition, and upon that he not only must assume the burden of proof, but must overcome certain strong presumptions of fact which are well recognized.

It is conceded on all hands that the decedent, who appears to have been born in 1836 or 1837, was the daughter of Charles Follin, who was born in 1779 and died in 1859. The petitioner alleges that the decedent was illegitimate and was the daughter of a negro slave. He seems to have selected this particular mother for her because it would not wholly answer his purpose to claim merely that she was illegitimate, for in that case she might have relatives upon her mother's side who could inherit from her. Hence, the attribution to her of a slave mother who would have no heritable blood. Of the assertion that the decedent's mother was a negro slave we can find no competent proof in the papers before us. There is an affidavit

by a person not of decedent's family on either side, that the affiant's mother told her that decedent was the illegitimate child of Charles Follin by a negro slave.   This statement, even if true, which seems doubtful, has no probative value  because neither the affiant nor her mother is or was of the family of the decedent, whose legitimacy is in question, the mother having been a daughter, by a former marriage, of Caroline C. Trescot whom Charles Follin married and who died in 1833.   Even under the liberal rules applicable to pedigree cases this declaration proves nothing.   The only question as to which the affidavit of Mrs. Burge is relevant is as to the illegitimacy of Mrs. Leslie, and if the latter was illegitimate neither Mrs. Burge nor her mother was related to her by consanguinity or affinity. The affidavit, therefore, has no probative value.   (*Aalholm* v. *People*, 157 App. Div. 618; 211 N. Y. 406.)   And even if the declaration of Mrs. Burge's mother could be held to be competent, by reason of her affinity to her stepfather Charles Follin, the father of the alleged illegitimate, it would still be wholly insufficient to sustain the petitioner's claim.   Not only is Mrs. Burge's statement as to her mother's alleged declaration wholly unsupported, but it is completely negatived by the other evidence in the case.   We, therefore, are forced to regard petitioner's allegation that Mrs. Leslie was the daughter of a negro slave as demonstrably disproven.

On the other hand, the evidence is overwhelming that she was the daughter of Charles Follin and one Susan Danforth, with whom he lived for years and whom he recognized and held forth as his wife.   It is true that no record of their marriage is produced or is apparently extant.   That, however, is unimportant in view of the mass of evidence to the effect that she was recognized as his wife, and that Mrs. Leslie was recognized as his and her daughter, not only by Charles Follin himself, but by his mother and the other members of his family. This, together with the strong presumption of legitimacy, which is well recognized in the law (*Caujolle* v. *Ferrié*, 23 N. Y. 90; *Mayer* v. *Davis*, 119 App. Div. 96; *Matter of Matthews*, 153 N. Y. 443), is convincing proof that Mrs. Leslie was the legitimate daughter of Charles Follin and his second wife, formerly Susan Danforth.   If she was the daughter of

Susan Danforth, it is immaterial whether or not she was illigitimate, for in any event she left at least one relative on her mother's side who was cited and represented upon the probate of her will.

Without undertaking to analyze at length the very voluminous record we may content ourselves with saying that upon that record we are unable to find any credible support for the petitioner's allegation as to the parentage of Mrs. Leslie, and very conclusive reasons for arriving at a different result. The petitioner does not, however, as we understand him, insist that the papers now before us, and which were before the surrogate, are sufficient to permit of his intervention in the probate proceeding. He seems to admit their weakness, and asks us to take evidence upon the question involved (See Code Civ. Proc. § 2763), and what we are really called upon to determine is whether or not we should adopt this course. We think not. As to our power to do so we have no doubt, but it is a power to be exercised sparingly and with discretion. It is not open to any one, merely by asserting a nebulous claim to an estate, to ask that a solemn decree admitting a will to probate be vacated, and a long and expensive contest be entered upon. He must first show with some degree of probability that his claim is well founded and that, if afforded an opportunity, he will be able to substantiate it. Here it is where petitioner fails.

The learned surrogate apparently placed his decision (as indicated by his opinion, 92 Misc. Rep. 663) not only upon the very evident weakness of the petitioner's case, but also upon what he viewed as the invalidity of the statute upon which the petitioner relies. We prefer to place our decision upon the first of these grounds, finding no reason to question the power of the Legislature to enact the statute in question.

The order appealed from should be affirmed, with ten dollars costs and disbursements to each respondent appearing and filing a brief in this court.

Clarke, P. J., Laughlin, Dowling and Page, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements to each respondent appearing and filing a brief herein.