In the Matter of the Application of BARONESS ALTHEA SAL-
VADOR to Set Aside the Decree Dated the 7th Day of Decem-
ber, 1914, Admitting to Probate the Last Will and Testament
of FRANK LESLIE, Deceased.

In the Matter of the Application of HENRIETTA R. HURLBUT,
as Administratrix of the Goods, Chattels and Credits of the
BARONESS ALTHEA SALVADOR, to Revive the Said Applica-
tion of Said BARONESS ALTHEA SALVADOR, Who Is Now
Deceased.

WILLIAM NELSON CROMWELL and LOUIS H. CRAMER, Individu-
ally and as Executors, etc., of FRANK LESLIE, Deceased,
and CARRIE CHAPMAN CATT, Appellants; HENRIETTA R.
HURLBUT, Respondent.

First Department, March 4, 1921.

Wills — probate — motion by administratrix of contestant for
revivor of lapsed proceeding to set aside decree of probate after
abortive attempts to establish claim against estate — inference
of bad faith — validity of will determined in prior proceeding.

A motion made by the administratrix of the contestant of a will for the
revivor of a lapsed proceeding commenced by the contestant to set aside
a decree of probate should be denied, where it appears that the contestant
had made several abortive attempts to establish her claim against the
estate; that an inference might be drawn that the proceeding was not in
good faith to establish the original claim, but designed among other
things to defeat another legacy; that the will had been sustained in a
prior proceeding, and that the proceeding sought to be revived was com-
menced long after the distribution of the estate.

APPEAL by William Nelson Cromwell and others from an
order of the Surrogate's Court of the county of New York
entered in the office of said surrogate on the 26th day of July,
1920, as resettled by an order entered in said surrogate's
office on the 18th day of August, 1920, granting the petition
of one Henrietta R. Hurlbut, as administratrix of Baroness
Althea Salvador, praying for the revivor of a lapsed pro-
ceeding alleged to have been commenced in her lifetime by
the late Baroness Salvador to set aside the decree probating
decedent's will.

First Department, March, 1921.          [Vol. 195.

*Ralph Royall* of counsel [*Hiram C. Todd* with him on the brief; *Sullivan & Cromwell,* attorneys], for the appellant William Nelson Cromwell, individually and as executor.

*Edgar T. Brackett,* attorney for the appellant Louis H. Cramer, individually and as executor.

*Horace E. Parker,* for the appellant Carrie Chapman Catt.

*Roger Foster,* for the respondent.

Greenbaum, J.:

The last will and testament of the late Mrs. Frank Leslie was duly admitted to probate by decree of the Surrogate's Court, dated December 7, 1914. The Baroness Salvador was not mentioned in the will.

Thereafter a proceeding was commenced by the grand-children of the deceased husband of the late Mrs. Frank Leslie to set aside the probate upon the ground that the decedent, Mrs. Leslie, was the illegitimate daughter of a negress slave and had no legal next of kin and that she did not have mental capacity to make a will; that her property was derived from her husband and, therefore, by virtue of section 91 of the Decedent Estate Law, reverted to her husband's heirs at law.

The charges were disposed of upon the merits and were held to be without foundation. (*Matter of Leslie,* 92 Misc. Rep. 663; affd., 175 App. Div. 108.)

The history of the present claim may be briefly stated as follows: During the lifetime of the Baroness Salvador and in January, 1915, she wrote a letter to Mrs. Hurlbut, her sister, in which she referred to a claim which she had against the departed Mrs. Leslie for expenses incurred in her behalf, and in which she also stated that the late Mrs. Leslie had told her in June, 1914, " that in addition to a sum of money, she was leaving a diamond sunburst which she has shown me many times and other things. I am sure that the estate would willingly send me $1,000, because until Mrs. Leslie was influenced, I was her first thought, after her own people. You can do what you please with this letter, but I have had many lawsuits, since my husband's death, and my hope has been that Mrs. Leslie would keep her promise and not only make a settlement with me but at least to give me back my own, with

interest." Thereupon Mrs. Hurlbut presented a claim in behalf of her sister, the baroness, to the executors in the amount of $1,000. Upon being told that the proper way to present a claim was to have it verified, there was submitted in August, 1915, a verified proof of claim of the Baroness Salvador increased from $1,000 to $9,700, which was made up of a number of items, among which may be mentioned household expenses, twenty years at $100 per year, $2,000; eighteen journeys to London at $100 each, $1,800; nursing during three illnesses in 1900, 1904 and 1910, $500; secretarial and other duties for twenty-one years, $4,200.

The executors rejected the claim. On January 28, 1916, the executors presented their accounts for judicial settlement and duly cited the Baroness Salvador in the proceedings, which were referred to Hon. Charles F. Brown as referee to pass upon the accounts and claims. The baroness appeared before the referee by her attorney at numerous hearings during 1916 and offered testimony to establish her claim against the estate.

On April 28, 1916, as appears, from the stenographer's minutes taken before the referee, the attorney of the baroness offered two prior wills of Mrs. Leslie, one dated April 24, 1907, and the other dated June 29, 1911, to the introduction of which objection was made on the ground that they were incompetent, immaterial and privileged. The referee overruled the objection and said: " I admit so much of them as contains a bequest to Baroness Althea Salvador in the following language, in the will of April 24th, 1907: ' I give and bequeath to Baroness Althea Salvador of Paris my diamond brooch with coronet on top;' and so much of the will bearing date June 29th, 1911, as contains a bequest to the Baroness Althea Salvador in the same language. I exclude all other parts of them, because they have no reference or connection with the Baroness Althea Salvador, and no other mention of her name."

On June 29, 1916, a motion was made on behalf of the baroness to reopen the hearing of her claim to take further testimony. Although this motion was granted no further testimony was submitted. The referee submitted his report in which he advised that the claim of the Baroness Althea Salvador be dismissed. The report was confirmed by decree

of the surrogate. No further action of any kind appears to have been taken by the Baroness Salvador against the estate until April 9, 1919, when she filed a petition again through her sister Mrs. Hurlbut, praying that the decree of December 7, 1914, admitting to probate the last will and testament of the decedent, be set aside and vacated. The petition alleged that the decedent was at the time of the execution of her alleged last will upwards of eighty years of age; was of unsound mind; insane; that she was subject to delusions, among which were that she was poor, of noble blood, " although she was and when of sound mind knew she was descended from an obscure family and had no baronial blood nor noble blood of any kind and   *   *   *   that she was of illegitimate birth."

The petition also referred to the fact that the decedent was a moral pervert, a sexual degenerate, suffering from various diseases including locomotor ataxia, and contained many other reflections upon her character and life. The petition also alleged that one Mrs. Carrie Chapman Catt was a legatee to the extent of $1,000,000 coupled with the request that the legacy be used for the purpose of advancing the cause of woman suffrage, and that Mrs. Catt procured the execution of said paper which was admitted to probate by exercising undue influence over the decedent, alleging that Mrs. Leslie was " easily influenced by flattery and cajolery, in the exercise of which said Mrs. Catt excelled."

On May 11, 1919, the Baroness Salvador died and on the 22d of April, 1920, Mrs. Hurlbut, who had been appointed administratrix of the estate of the Baroness Salvador, petitioned the Surrogate's Court for an order that the proceedings theretofore instituted by her to set aside the probate of the paper purporting to be the last will and testament of Frank Leslie, deceased, be revived. Upon the hearing of this petition an order was duly made by one of the learned surrogates that the motion for revivor be granted.

In the petition for revivor reference is made to the alleged fact that in a prior will decedent had appointed trustees " to create and incorporate an institute to be called the Frank Leslie Institute, for charitable purposes, namely, the benefit of women who were poor and struggling artists, authors,

journalists, musicians, actresses, sculptors and painters, and to transfer her residuary estate to said institute."

The petition further alleges that since the filing of the original petition by the Baroness Salvador an institution is in existence in the city of New York under the name of the "Four Arts," which discharges the functions, so far as it is able, intended by said Frank Leslie to be exercised by said Frank Leslie Home, and which is in urgent need of funds in order to extend its privileges to young and struggling artists who may need and wish assistance from said institution but for whom there is at present insufficient accommodation there.

It also appears that the executors have paid over substantially all of the assets of the estate of the decedent, amounting to upwards of $1,700,000 in accordance with the surrogate's decree.

In *Matter of Leslie* (175 App. Div. 108, 112) this court in its opinion stated as follows: "It is not open to any one, merely by asserting a nebulous claim to an estate, to ask that a solemn decree admitting a will to probate be vacated, and a long and expensive contest be entered upon. He must first show with some degree of probability that his claim is well founded and that, if afforded an opportunity, he will be able to substantiate it."

We are of opinion, in view of the history of the various claims made by the late Baroness Salvador, that the motion made by her administratrix should have been denied. In the first place, she originally only asserted a claim as creditor for $1,000 against the estate. She subsequently increased the claim to $9,700. The claim being disallowed by the court, she began a proceeding to set aside the probate proceedings on the ground that she was a legatee under prior wills and that the paper writing which was probated was not the will of decedent but was induced by undue influence and was the product of a diseased mind. The evidence showed that the diamond brooch which was mentioned in two prior wills was of the value of about $1,000. Upon such a state of facts it is now sought to set aside the will after abortive efforts to establish a claim against the estate. That the procurement of the diamond brooch in the two former wills is not the real purpose of the petitioner becomes apparent from the fact that the

petition for revivor contains allegations from which it may be fairly inferred that one of the objects of the revivor proceeding is to defeat the legacy given to Mrs. Carrie Chapman Catt for the promotion of the cause of woman suffrage so that some other institution may receive the benefits of that legacy. In other words, it is apparent that this is an attempt, under the guise of seeking the collection of a legacy for a comparatively small amount, to abuse the process of the court for a purpose ulterior to that for which the petitioner ostensibly has brought this proceeding. Besides it is evident that the proceeding is not brought in good faith; that upon a previous contest, the validity of the will was sustained, and that in view of the distribution of the estate long before the commencement of this proceeding, it would work a gross injustice and a great hardship upon those who would be required to defend what seems to be an ill-founded claim. Justice requires a reversal of the order appealed from, with ten dollars costs and disbursements, and denial of the motion of revivor, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion for revivor denied, with ten dollars costs.